## LEO STEIN, RELATOR-APPELLANT, v. THE CITY OF LONG BRANCH ET AL., DEFENDANTS-APPELLEES.

Argued November 8, 1923—Decided March 3, 1924.

**Building Regulations—Municipalities—Zoning—Application for Permit, Requisites of—Peremptory Writ Allowed.**

On rule to show cause why a writ of *mandamus* should not issue requiring the building inspector of the city of Long Branch to issue permits for the erection of six dwelling-houses upon a tract of land owned by the prosecutor lying between Ocean avenue and the Atlantic ocean, having a frontage on the avenue of two hundred and ten feet and a depth of about six hundred feet.

Before Justices TRENCHARD and PARKER.

For the relator-appellant, *Howe & Davis.*

For the defendants-appellees, *Robert H. McCarter* and *Thomas P. Fay.* .

PER CURIAM.

The tract lies in a section which has for many years been devoted to large and expensive private residences, one of which, as we understand the case, formerly stood on this very tract, but was destroyed by fire. The relator laid out his tract of land for subdivision by running a roadway down the middle of it and leaving on each side of this roadway three building plots, two of which were one hundred and eighty feet front and the third one hundred and sixty feet front by eighty-five to ninety-five feet deep. His intention was to build a one-family house on each. Some of these houses were to be of the so-called bungalow type. It is conceded, or undisputed, that the plans filed met the requirements of the building ordinance of the city as then in force; but it

appears that a zoning ordinance was then in contemplation and that the building inspector, while he received the plans without objection, held them without action thereon for some time, and finally turned them over to a committee on zoning. This committee seems to have returned the plans to the relator stating that the applications were refused, and about a week thereafter the city passed a zoning ordinance which, if valid, will prevent the erection of more than one house on the entire tract now in question. It provides that in that section of the city all buildings should be erected on one lot of land one hundred and fifty feet front by two hundred and fifty feet in depth, should be two and one-half stories high, and should cost not less than $15,000, and that no bungalow or one-and-a-half story buildings should be erected, and only one house on any lot as now laid out on Ocean avenue. These provisions seem to make it quite plain that the intention was to preserve the shore-front properties in their existing condition without reference to the desires of the owners, so that on this tract of about three acres the owner would be prohibited from building more than one house, that to cost at least $15,000, and to be, apparently, two and one-half stories high, neither more nor less.

Apart from the questions mooted with respect to the zoning ordinance, certain technical objections to the issue of this writ are made. The first is that by the act of 1917, page 102, it is provided that the department shall not receive or file any plans or specifications unless the same bear the seal of a licensed architect of the State of New Jersey, or in lieu thereof, an affidavit sworn to by the person who drew or prepared the same. The facts are that the plans submitted by the relator did not bear the seal of a licensed architect, nor were they verified by the statutory affidavit; consequently, it is argued that, although the inspector accepted his plans and made no objection thereto, he acquired no right to have them favorably acted upon. On this point we think the act is merely directory, and that, to all intents and purposes, the plans were received and filed, and that, inasmuch as it appears without question that the plans were actually made

by a licensed architect who had a seal and merely neglected to put the seal on them, and as the point was never made until this action was begun, it ought not to prevail now.

Another technical objection is that no map of the lot subdivisions was filed in the county clerk's office. Certain statutes are cited, but we are unable to see that they require any such filing as a condition precedent to submitting plans or to building on the property. The evident intent of the act of 1913, page 119, is to prevent the dedication of public streets until the municipality has an opportunity to approve the layout. So, also, the act of 1917, page 768, forbids the filing of a map unless certain monuments are placed in the ground. Neither of these seems to be relevant to the present controversy. The situation of the prosecutor, therefore, at the time the zoning ordinance was enacted, was that of the owner of real estate who desired to build upon it and had qualified himself to secure a permit in every respect except the immaterial one of having an architect's seal on his plans. We think the subsequent passage of a zoning ordinance did not affect this right. See *Paffendorf* v. *Lyndhurst*, 1 *N. J. Misc. Rpts.* 290 (No. 16).

But apart from this, the restrictive provisions of the zoning ordinance, as above quoted, we think are clearly unreasonable, and, therefore, unconstitutional. *Handy* v. *South Orange*, 118 *Atl. Rep.* 838; *Dorison* v. *Saul*, 118 *Id.* 691; *Vernon* v. *Westfield*, 46 *N. J. L. J.* 297.

The relator is entitled to a peremptory writ.